UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

OMAR RASHAD POUNCY,

                    Plaintiff,                    Case No. 1:23-cv-280

v.                                                Honorable Phillip J. Green

JEREMY BUSH, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion.  *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility, the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan, and Sparrow Hospital, also located in Carson City, Montcalm County, Michigan.  Plaintiff sues MDOC Deputy Director Jermey Bush, Warden Unknown Rewerts, Warden Unknown Burgess, Deputy Warden Jeffrey Clouse, Assistant Deputy Warden Unknown Krause, Lieutenant Unknown Morrison, Sergeant Unknown Baker, Captain Unknown Fears, Sergeant Unknown Ward, Sergeant Unknown Wight, Department Analyst Sue Norton, Corrections Transportation Officer Unknown Bryce, and Sparrow Hospital.

Plaintiff alleges that, on March 1, 2023, while being transferred from the Macomb County Jail to ECF, unidentified "transportation officers" stopped at DRF, where Plaintiff was asked to leave the bus.[2] (Compl., ECF No. 1, PageID.1.)  Plaintiff was informed that Defendants Burgess, Clouse, and Krause had ordered that Plaintiff go through a body scanner before returning to ECF.  (*Id.*, PageID.1–2.) Plaintiff went through the body scanner three times before he was escorted back to the bus. (*Id.*, PageID.2.)

---

[2] Plaintiff refers to the first vehicle used to transport Plaintiff and other prisoners as both a "bus" and a "van." For clarity, the Court will refer to this first vehicle used to transport Plaintiff on March 1, 2023, as a "bus."

4

Approximately thirty minutes after departing DRF, non-party Corrections Transportation Officer (CTO) Beetz stopped at a gas station where he and another unnamed CTO communicated. (*Id.*) The CTOs then returned to the bus, which traveled back to DRF. (*Id.*) Once in the DRF parking lot, Plaintiff was escorted into a new van. (*Id.*) CTO Beetz informed Plaintiff that Defendants Burgess, Clouse, Krause, Bush, Rewerts, and Morrison "wanted Plaintiff to go to Sparrow Hospital to have his cavity checked via a[n] x-ray." (*Id.*, PageID.2–3.) Plaintiff verbally objected but got into the van. (*Id.*, PageID.3.)

Once in the van, Plaintiff asked CTO Beetz and the other CTO to ensure that Plaintiff's legal property would be left with him at DRF. (*Id.*) The non-party CTOs denied Plaintiff's request, telling Plaintiff that Defendants Burgess, Clouse, and Krause ordered that Plaintiff's legal property be brought to ECF so that they could go through it to see what documents were bearing Plaintiff's name. (*Id.*)

Plaintiff asked to speak with Defendant Morrison. (*Id.*) "When Defendant Morrison came to speak to Plaintiff," Plaintiff told Defendant Morrison that he would not cooperate with the cavity search and that his legal property was being wrongly confiscated and read. (*Id.*) Defendant Morrison responded that, if Plaintiff did not cooperate, Plaintiff would be restrained and forcibly x-rayed. (*Id.*) Defendant Morrison ordered his staff to retrieve the restraint chair. (*Id.*)

Once the restraint chair arrived at the DRF parking lot, Defendant Bryce escorted Plaintiff out of the van and ordered Plaintiff into the restraint chair. (*Id.*) Plaintiff refused. (*Id.*) Defendant Wight intervened, explaining that Plaintiff would

only be restrained if he refused the x-ray.  (*Id.*, PageID.4.)  The restraint chair was then loaded into another vehicle and Plaintiff and the restraint chair were taken to Sparrow Hospital.  (*Id.*)  While on the way, Defendant Bryce told Plaintiff that, if forced to, "they would go up his (Plaintiff's) ass and get whatever was inside of Plaintiff out."  (*Id.*)  When Plaintiff told Defendant Bryce that Plaintiff did not have anything inside of him and "that it was illegal to do a cavity search or any kind of intrusion into his body without a search warrant," Defendant Bryce told Plaintiff that Plaintiff was a prisoner without any rights.  (*Id.*)

Upon arrival at Sparrow Hospital, Plaintiff refused to leave the van.  (*Id.*)  Defendants Wight and Bryce threatened Plaintiff with "excessive force," prompting Plaintiff to get out of the van and go into the hospital.  (*Id.*)

Once inside the hospital, Plaintiff told hospital staff that he was not agreeing to be x-rayed or searched.  (*Id.*)  Hospital staff asked Defendants Wight and Bryce the reason for bringing Plaintiff to the hospital, to which they replied that they believed that Plaintiff had contraband inside of his body.  (*Id.*)  Plaintiff denied the same.  (*Id.*, PageID.5.)  When hospital staff stepped out of the room, Defendant Bryce told Plaintiff that he would be restrained and "x-rayed one way or the other."  (*Id.*)  A hospital staff member returned and put a needle in Plaintiff's arm and wheeled Plaintiff into another room.  (*Id.*) Plaintiff submitted to a CAT scan that showed that Plaintiff did not have any foreign objects inside of his body.  (*Id.*)  Plaintiff alleges that the needle used to insert the IV for the CAT scan caused Plaintiff pain.  (*Id.*)

Plaintiff was escorted back to DRF, where he was placed in segregation, subjected to a strip search by Defendant Fears, and was placed in suicide garb, as ordered by Defendant Rewerts. (*Id.*, PageID.5–6.) Per an order by Defendant Rewerts, Plaintiff was also placed in a dry cell (with no water) and deprived of shoes. (*Id.*, PageID.6.) Plaintiff was placed in an observation cell with a camera and constant light exposure, interfering with Plaintiff's sleep. (*Id.*)

On March 2, 2023, Plaintiff was told that he would be transferred to ECF. (*Id.*) Plaintiff was "forced to strip" and was restrained in belly chains and shackles. (*Id.*) Plaintiff was also required to go through a body scan, as ordered by Defendant Rewerts. (*Id.*) The body scan did not reveal any foreign objects. (*Id.*) Plaintiff was placed in "the black box," which is used to transport prisoners who are at risk of escape or who have histories of assaultive behavior, neither of which applied to Plaintiff, and transported to ECF by Defendants Baker and Ward. (*Id.*)

Once at ECF, Plaintiff asked Defendants Baker and Ward for Plaintiff's legal property. (*Id.*) Defendant Baker responded that he would get it and return it to Plaintiff. (*Id.*, PageID.6–7.) Plaintiff was then escorted to segregation, where Plaintiff was strip searched and placed in a dry cell with a camera and constant exposure to light. (*Id.*, PageID.7.)

"Plaintiff was eventually allowed to speak to healthcare." (*Id.*) Healthcare advised Defendants that, in light of the CAT scan results, there was no basis to keep Plaintiff in a dry cell. (*Id.*) Thereafter, Defendants Baker and Ward came to Plaintiff's cell doors with Plaintiff's legal property; however, much of it was missing.

(*Id.*, PageID.8.)  When Plaintiff asked about the missing legal materials, Defendant Ward declared that "ninety percent" of Plaintiff's legal documents were confiscated because they did not have Plaintiff's name on them.  (*Id.*)  Defendant Ward also told Plaintiff that prison staff could "skim the legal documents per policy."   (*Id.*) Defendants Baker and Ward told Plaintiff that his confiscated legal documents would not be returned.  (*Id.*)  Plaintiff informed Defendants Baker and Ward that he would be filing a lawsuit due to the "unconstitutional reading and confiscation of his (Plaintiff's) legal property."  (*Id.*)

Though Plaintiff's counsel had requested that confidential attorney-client telephone calls be scheduled for March 2, 2023, and March 3, 2023, Defendant Norton "neglected to honor the requests."  (*Id.*, PageID.9.)

Plaintiff claims that Defendants (1) subjected Plaintiff to unconstitutional searches of his body cavity using a CAT scan, (2) harassed Plaintiff through retaliatory body scans and strip searches, (3) deprived Plaintiff of sleep by keeping Plaintiff in a cell with constant light exposure, (4) subjected Plaintiff to "unnecessary pain" through the insertion of an IV in connection with the CAT scan, (5) deprived Plaintiff of shoes while in segregation, (6) deprived Plaintiff of legal documents after reading them, (7) denied Plaintiff his right to consult with his counsel via confidential telephone calls, and (8) deprived "Plaintiff of his right to equal protection where no other prisoner was forced to endure what Plaintiff had to."  (*Id.*, PageID.11–12.) Plaintiff seeks nominal, compensatory, and punitive damages.  (*Id.*, PageID.12.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915I(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against Sparrow Hospital

Plaintiff brings claims against Sparrow Hospital under § 1983 arising out of the search of Plaintiff's body using a CAT scan, and the pain caused by the insertion of the IV needle.  However, Sparrow Hospital is identified only as a "business entity located in Carson City, Michigan." (ECF No. 1, PageID.11.)  Plaintiff does not contend that Sparrow Hospital is a state actor.

In order for the conduct of a private party, such a Sparrow Hospital, to be considered under the color of state law for purposes of § 1983, the conduct of the party must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."  *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests.  The first is the symbiotic relationship test, or nexus test, which asks whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58.  Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970).  Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally*, *Lugar*, 457 U.S. at 936–39 (discussing three tests).

Here, viewed indulgently, Plaintiff's complaint alleges that Sparrow Hospital medical personnel were compelled by Defendants Wight and Bryce to conduct diagnostic testing to determine whether Plaintiff had contraband inside of his body. Therefore, at this stage of the proceedings, the Court assumes without deciding that Sparrow Hospital acted under color of law for purposes of § 1983.  However, even assuming that Sparrow Hospital acted under color of law, Plaintiff fails to allege facts demonstrating the personal involvement of that entity in the insertion of the IV needle or performance of the CAT scan.

It is well-settled that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under § 1983 and that liability cannot be based upon a theory of *respondeat superior* or vicarious liability.   *See Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *see also Taylor v. Michigan Dep't of Corr.*, 69 F.3d 716, 727-28 (6th Cir. 1995) (discussing that plaintiff must allege facts showing that the defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability).  Thus, an entity may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694).  In such a case, the finding of a policy or custom is the initial determination to be made.  *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996).  The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the entity and show that the particular injury was incurred because of the execution of that policy.  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509. At the dismissal stage, a Plaintiff can demonstrate a policy or custom by alleging facts that show one of the following circumstances: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal

rights violations." *Lipman*, 974 F.3d at 747 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).  Plaintiff has not alleged facts that would satisfy any of the foregoing options.

Plaintiff's suit against Sparrow Hospital appears to be solely based upon a theory of *respondeat superior* because Plaintiff only challenges the IV needle inserted and the CAT scan performed by unidentified hospital medical staff.  Plaintiff does not allege facts to show the involvement of any hospital policymaker, that any injury he suffered was the result of a hospital policy or regulation, or that the hospital maintains a "custom" of constitutional violations "so permanent and well settled as to constitute a custom or usage with the force of law."  *Claiborne Cnty.*, 103 F.3d at 507.  Plaintiff also does not allege or plead facts that would show that any allegedly improper conduct of hospital personnel arose from the Sparrow Hospital's deliberate failure to adequately investigate, train, or regulate its employees.

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate.  *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).  Therefore, the Court will dismiss Plaintiff action as against Sparrow Hospital.[3]

---

[3] Plaintiff does not allege that any other Defendant directed Sparrow Hospital to specifically perform a CAT scan, requiring an IV needle, or was otherwise involved in any decision that led to the use of an IV. Indeed, Plaintiff alleges that the remaining

**B.     Claims Regarding Unreasonable Body Scans, Strip Searches, and CAT Scan Search**

Plaintiff claims that Defendants subjected Plaintiff to an unconstitutional search of his body cavity using a CAT scan.  (ECF No. 1, PageID.11.)  Viewed indulgently, it appears that Plaintiff also disputes the reasonableness of the body scans and strip searches, generally, claiming that such searches were unnecessary as repetitive and done "although it was already definitively proven that Plaintiff did not have any foreign objects inside of him." (*Id.*, PageID.7.).  Because Plaintiff does not specify the constitutional amendment on which his claims of unconstitutional search are based, the Court will address Plaintiff's claims under both the Fourth and Eighth Amendments.

**1.     Fourth Amendment**

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. Am. IV.  It applies, however, only when "the person invoking its protection can claim a justifiable, a reasonable or a legitimate expectation of privacy that has been invaded by government action."  *Hudson v. Palmer,* 468 U.S. 517, 525 (1984).

---

Defendants directed Sparrow Hospital to use "x-ray" technology. Accordingly, the Court has construed Plaintiff's claim of "unnecessary pain as a result of the unneeded insertion of the IV needle into [Plaintiff's] arm," (ECF No. 1, PageID.12), as against Sparrow Hospital only. To the extent that Plaintiff seeks to bring a claim against any other Defendant related to the pain caused by the IV needle, his claim would fail as Plaintiff does not allege facts that would indicate the personal involvement of any other Defendant.

Both the Supreme Court and the Sixth Circuit have recognized that, under the Fourth Amendment, prisoners and detainees may be subjected to searches, including strip searches and body-cavity searches, without individualized suspicion. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333-34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct visual body-cavity searches upon inmates at the time they are admitted to the general jail population); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) ("[S]uspicionless strip searches [are] permissible as a matter of constitutional law. . . ."); *see also Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 529 (6th Cir. 2016). Nevertheless, searches of prisoners "may be unreasonable by virtue of the way in which [they are] conducted." *Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (citing *Stoudemire*, 705 F.3d at 574) (holding that searches must be conducted in a manner that is reasonably related to the jail's legitimate objectives and that allegations that female prisoners were forced to sit on a chair and spread their labia in unsanitary conditions and in full view of other prisoners were sufficient to state a claim for unreasonable search and seizure). In determining the reasonableness of a search, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Stoudemire*, 705 F.3d at 572 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (6th Cir. 2003).  The Sixth Circuit has recognized some limited circumstances in which a prison strip search may implicate the Fourth Amendment.  *See, e.g.*, *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (recognizing the facial validity of a Fourth Amendment invasion-of-privacy claim where male prisoners were allegedly strip searched in the prison yard in the presence of other inmates and female officers); *Kent v. Johnson*, 821 F.2d 1220, 1226–27 (6th Cir. 1987) (holding that a Fourth Amendment challenge to a prison policy requiring male prisoners to expose their naked bodies to regular and continuous surveillance by female officers was facially valid).  Those concerns, however, do not apply to the simple body scans alleged, and there are no allegations that any of the foregoing circumstances were present when Plaintiff was strip searched.  In sum, Plaintiff's allegations regarding the body scans and strip searches are insufficient to rise to the level of a Fourth Amendment violation.

As to Plaintiff's claim regarding the CAT scan, Plaintiff alleges that he was subjected to a CAT scan by medical professionals in a hospital setting upon suspicion that Plaintiff had ingested contraband.  Plaintiff does not allege that anyone other than medical personnel were present for the CAT scan, that he was subjected to measures that would have intruded upon his dignitary interests, or that the CAT scan posed any danger to Plaintiff's health or safety.  Given the facts as alleged by

16

Plaintiff, the Court finds that the CAT scan, significantly less intrusive than a permissible body cavity search, did not violate Plaintiff's Fourth Amendment rights. The Court will therefore dismiss Plaintiff's Fourth Amendment claim.

### 2. Eighth Amendment

To the extent that Plaintiff is claiming that the body scans, strip searches, and CAT scan amounted to cruel and unusual punishment in violation of the Eighth Amendment, his claims likewise lack merit. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim that he was subjected to unwanted searches must be analyzed under Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force

to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson*, 503 U.S. at 6 (citing *Whitley*, 475 U.S. at 320–21).  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Plaintiff alleges that he was searched in the course of being transported, admitted to segregation, and transferred between facilities.  Undoubtedly, each institution "must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees," *Bell v. Wolfish*, 441 U.S. 520, 540 (1979), which includes the ability to perform otherwise invasive searches of prisoners, *Florence*, 566 U.S. at 328.  And, here, the facts alleged do not allow this Court to infer that any alleged search was a "punishment," let alone was performed "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6.

18

Plaintiff simply fails to allege sufficient factual allegations to allow this Court to infer an Eighth Amendment claim against Defendants based upon the body scans, strip searches and CAT scan. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim.[4]

### C. Claims Regarding Retaliatory Body Scans and Strip Searches

Plaintiff contends, in a conclusory fashion, that the body scans and strip searches described in the complaint were "retaliatory." (ECF No. 1, PageID.11.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must allege facts that would plausibly suggest that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

---

[4] Additionally, the Sixth Circuit has held that an Eighth Amendment claim is not cognizable where the plaintiff has not alleged any physical injury from the search. *See Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010). Plaintiff does not contend that he suffered any physical injury as a result of the body scans and strip searches. Thus, on this basis as well, Plaintiff fails to state an Eighth Amendment claim.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  However, "alleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff has alleged merely the ultimate fact of retaliation.  Even if this Court assumes that Plaintiff's verbal objections to the continued body scans and searches were First Amendment protected activity, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendants' continued body scans and searches were motivated by Plaintiff's protected activity, as opposed to a desire to search Plaintiff in connection with Plaintiff's transfer, intake, and placement in segregation.  Certainly, Defendants' decisions to continue to search Plaintiff followed Plaintiff's objections to those

searches.  However, simply because one event precedes another by some unspecified amount of time does not automatically show retaliation.  *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive").

Ultimately, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Because Plaintiff's conclusory claim of retaliation falls far short of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, the Court will dismiss the same.

### D.   Claims Regarding Lack of Shoes and Exposure to Constant Light While in Segregation

Plaintiff claims that Defendant Rewerts ordered that Plaintiff be deprived of shoes and subjected to constant light, resulting in sleep deprivation, while in segregation from March 1, 2023, to March 2, 2023.  (ECF No. 1, PageID.6.)  Plaintiff also claims that, once transferred to ECF on March 2, 2023, Plaintiff was also exposed to constant light while in segregation.

As discussed above, with its prohibition against cruel and unusual punishments, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of

pain." *Rhodes*, 452 U.S. at 346.  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Id.* at 347; *see also Wilson*, 148 F.3d at 600–01.  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).  The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.

22

Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Plaintiff takes issue with the constant lighting in segregation at both the DRF and ECF facilities, claiming that the light interfered with his sleep. The Court recognizes that "sleep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). However, Plaintiff's vague allegations do not rise to the level of an Eighth Amendment violation. While Plaintiff alleges that the lighting interfered with his sleep, his complaint is devoid of facts from which the Court could infer that any of the named Defendants were aware of Plaintiff's issues with the lighting and deliberately ignored them. *See, e.g.*, *Chavarria v. Stacks*, 102 F. App'x 433, 435 (5th Cir. 2004) (holding that constant illumination of a prison administrative unit at night in order to prevent guards from being assaulted was a reasonable security measure and thus did not violate the Eighth Amendment); *Zatko v. Rowland*, 835 F. Supp. 1174, 1181 (N.D. Cal. 1993) (noting that continuous light depriving a prisoner of sleep would be unconstitutional but holding there was no constitutional violation because the officers did not use the light to keep the prisoner awake).

Plaintiff also fails to state an Eighth Amendment claim based upon his allegation that he was forced to go without shoes while housed in segregation at DRF for the remainder of March 1, 2023, until he was transferred on March 2, 2023. (ECF No. 1, PageID.6.) Courts have concluded that "a lack of shoes for a few days" does not rise to the level of an extreme deprivation required to constitute an Eighth Amendment violation. *See, e.g.*, *Bonds v. Lindamood*, No. 1:16-cv-85, 2018 WL 817229, at *4 (M.D. Tenn. Jan. 16, 2018); *Miller v. Netto*, No. 3:17-cv-362 (KAD), 2019 WL 4646973, at * 9 (D. Conn. Sept. 24, 2019) (dismissing detainee's claim premised upon a lack of shoes for four hours, concluding that his allegations did not show that the lack of shoes "posed a serious risk of harm to his health"). Here, Plaintiff does not contend that his lack of shoes for this limited time while in an observation cell posed "a sufficiently serious risk to [Plaintiff's] health or safety" or that any named Defendant knew of, let alone acted with deliberate indifference to, such a risk. Mingus, 591 F.3d at 479–80. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims for unconstitutional conditions of conferment.

### E.    Claims Regarding Unequal Treatment

Plaintiff brings a claim for violation of his Fourteenth Amendment right to equal protection, alleging that no other prisoner was "forced to endure what Plaintiff had to." (ECF No. 1, PageID.12.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne*

*v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Sixth Circuit has described a universe of three types of equal protection claims:

> "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). [Plaintiff] does not argue an infringement of a fundamental right or that he is a member of a suspect class. Rather, [Plaintiff] relies on the third argument—whether others "similarly situated" received different treatment "without any rational basis for the difference." *Id.* This is called a "class-of-one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

*Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020).  "[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class."  *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (internal quotation marks omitted).

Plaintiff does not allege that he was denied a fundamental right.  Nor does he claim that he was targeted because of his membership in a protected class.  Instead, Plaintiff simply claims that no other prisoner was treated similarly to Plaintiff. Plaintiff is alleging a "class of one" equal protection claim.

To prove a class-of-one equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook*, 528 U.S. at 564; *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011).  A plaintiff "must overcome a 'heavy

burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc.*, 430 F.3d at 791). "[U]nless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'" *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the[ decision-maker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff fails to allege that the others who were treated differently were similarly situated to Plaintiff in all relevant respects. *Umani,* 432 F. App'x at 460. Plaintiff's conclusory allegations of fact do not permit the Court to infer that he was treated differently than other similarly situated persons. *See, e.g., Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D.

Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").  Moreover, Plaintiff's complaint is wholly devoid of facts suggesting that any Defendants intentionally and arbitrarily discriminated against him.  Plaintiff's conclusory allegations do not suffice to state a claim.  *See Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment equal protection claim.

### F.    Claims Regarding the Denial of Attorney Telephone Calls and Reading and Confiscation of Legal Documents

Finally, Plaintiff claims that Defendant Norton violated Plaintiff's constitutional rights by denying Plaintiff the ability to consult with his attorney via telephone on March 2, 2023, and March 3, 2023.  He also claims that Defendants violated Plaintiff's constitutional rights by reading and confiscating various unspecified legal documents.

#### 1.    First Amendment Right to Receive Confidential Information

First, with respect to Plaintiff's claim that Defendants read Plaintiff's legal documents, the Sixth Circuit has recognized that a prison's security needs do not automatically trump a prisoner's right to receive confidential correspondence "that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts."  *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) (citing *Kensu v. Haigh,* 87 F.3d 172, 174 (6th Cir. 1996)); *Davis v.*

*Goord,* 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail. . . .")). However, as the Sixth Circuit explained in *Sallier,*

> Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney.

*Sallier*, 343 F.3d at 874.

The same is true for Plaintiff's unidentified legal documents. Plaintiff does not describe the documents alleged to have been read and confiscated, and he does not plead facts that would suggest that, in reading these documents, Defendants interfered with Plaintiff's access to the courts or his confidential relationship with an attorney. Indeed, Plaintiff does not allege that these documents were inherently confidential or protected by the attorney-client privilege, only that they were "legal." It is Plaintiff's obligation to plead enough facts that would set forth a claim plausible on its face; conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 663. Because Plaintiff's allegations fall far short of the requirements of Rule 8 of the Federal Rules of Civil Procedure, the Court will dismiss Plaintiff's claims premised upon Defendants' reading of Plaintiff's legal documents.

### 2. First Amendment Right to Access to the Courts

Plaintiff also contends that Defendants interfered with Plaintiff's access to the courts by denying Plaintiff the opportunity to consult with his attorney on March 2, 2023, and March 3, 2023, and denying Plaintiff access to his legal documents. It is

well established that prisoners have a First Amendment constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead facts that would plausibly suggest that the actions of the defendants have hindered, or are presently hindering, Plaintiff's efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir.

1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Therefore, a plaintiff must plead facts that would demonstrate that "a nonfrivolous legal claim ha[s] been frustrated or was being impeded" in a manner "sufficient to give fair notice to the defendant." *Id.* at 415–16. The predicate claim must "be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope," and "the remedy sought must itself be identified" and not otherwise available in a lawsuit that has not yet been brought. *Id.*; *see also Clark v. Johnston*, 413 F. App'x 804, 816 (6th Cir. 2011).

Plaintiff fails to provide this Court with any facts that would suggest that Defendants' confiscation of certain of Plaintiff's legal materials or the denial of Plaintiff's ability to speak with his attorney via telephone on two occasions were connected to a direct appeal, habeas corpus application, or civil rights claim, as would trigger Plaintiff's right to access to the courts. *Thaddeus-X*, 175 F.3d at 391. Plaintiff also fails to provide this Court with sufficient facts to meet the element of actual injury in that he has not described any nonfrivolous legal claim that has been frustrated or impeded by Defendants actions. *See Christopher*, 536 U.S. at 415–16.

### 3.     Sixth Amendment

Construed liberally, Plaintiff also appears to claim that Defendants violated Plaintiff's right to the attorney-client privilege by reading Plaintiff's legal documents and denying Plaintiff telephone calls with his attorney.  Not only does Plaintiff fail to allege facts that would implicate the attorney-client privilege as to the missing legal documents, but "[s]tanding alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right."  *Clutchette v. Rushen,* 770 F.2d 1469, 1471 (9th Cir.1985); *see also, Dye v. Hofbauer,* 197 Fed. Appx. 378, 383 (6th Cir. 2006) ("The attorney-client privilege is a creation of the common law, and a violation of this privilege generally does not constitute" a constitutional violation.).  Plaintiff can plead a violation of his Sixth Amendment rights by invasion of the attorney-client relationship only if he pleads facts to show that the invasion caused Plaintiff to be deprived of his right to counsel or his right to the effective assistance of counsel in a criminal case against him.  *See Dye*, 197 Fed. Appx. at 383; *United States v. Castor*, 937 F.2d 293, 297 (7th Cir.1991); *United States v. Hernandez,* 937 F.2d 1490, 1493 (9th Cir.1991) (citing *Weatherford v. Bursey,* 429 U.S. 545, 554–57 (1977)).  Plaintiff has not made that showing.

### 4.     Fourteenth Amendment

Finally, Plaintiff contends that he was deprived of his legal documents, which this Court construes as a Fourteenth Amendment due process claim.  The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."  *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  Any such claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527

(1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530–36. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his property. For each of these reasons, the Court will dismiss Plaintiff's claims against Defendants for denying

Plaintiff the ability to consult with his attorney via telephone, and against Defendants Baker and Ward for reading and confiscating Plaintiff's legal documents.

### G.   Claims Regarding Verbal Harassment

Plaintiff claims that Defendants threatened Plaintiff with "excessive force" if Plaintiff refused to enter the hospital and submit to a search.  (ECF No. 1, PageID.4.) Plaintiff also alleges that Defendant Bryce told Plaintiff that Plaintiff was a prisoner without any rights.  (*Id.*)  Liberally construed, the Court will address Plaintiff's claims of verbal harassment under the Eighth Amendment.

While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey*, 832 F.2d at 955; *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (holding that verbal harassment, including a threat of assault, was not punishment that violated the plaintiff's constitutional rights).  Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Ivey*, 832 F.2d at 955; *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").  The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment asserted by Plaintiff.

### H.   Claims of Conspiracy

Finally, Plaintiff alleges that Defendants "participated in the conspiracy" to violate Plaintiff's constitutional rights.  (ECF No. 1, PageID.11.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no factual allegations regarding any agreement between Defendants with the objective to violate Plaintiff's constitutional rights beyond the fact that Defendants spoke to one another in the course of performing their respective duties.  As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.  Although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely

explained by, lawful, unchoreographed...behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).

Moreover, a plaintiff "cannot succeed on a conspiracy claim [when] there was no underlying constitutional violation that injured [the plaintiff]." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (citing *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007)).  As thoroughly discussed above, Plaintiff fails to set forth any claim against Defendants for violation of Plaintiff's constitutional rights.  As such, Plaintiff cannot maintain a plausible conspiracy claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  May 4, 2023                              /s/ Phillip J. Green
                                                 PHILLIP J. GREEN
                                                 United States Magistrate Judge